We'll hear the appeal now in DaSilva v. Indiana. Ms. Kauffman-Joseph. Yes, Your Honor. Yeah, yep. Always good to have clean glasses. Thank you, Your Honor. I don't think you'll have any disagreement from the judges of this panel. And they're not clean yet. All right, now Ms. Kauffman-Joseph. Good morning. May it please the Court. As you mentioned, my name is Hannah Kauffman-Joseph. And I represent three of the four original plaintiffs in this matter. Well, we represent all four plaintiffs, but there's three that are parties to this appeal. Niki DaSilva, Gabrielle McLemore, and Samantha Lozano. We are here today to ask the Court to reverse the dismissal by the District Court because the District Court erroneously granted a motion to dismiss by the State of Indiana because the District Court relied on matters outside the pleadings. In addition, the District Court applied a case, Hearn, that even if it was applied in the same manner it's been applied in this district, that the District Court did not accurately conduct the analysis that Hearn would require, finding that the House and Senate of the State of Indiana was the employer versus the actual state itself. In addition, we're asking the Court to revisit Hearn and Holmes in accordance with dicta that was issued in Tibbs. Counsel, before we get too far into this, we do need to think about the State's contention that we lack appellate jurisdiction. Logically, that is the place to start. Happy to. Judge Easterbrook, this issue of jurisdiction is based on two cases from this circuit, King and Schaffer. And it's the main problem with, well, the main issue on jurisdiction, the reason that jurisdiction, this Court has jurisdiction, is because the delay was one, virtually, well, it was only nine days. Well, look, you have 30 days to appeal the District Court's decision. If you take 39, it will be dismissed for want of jurisdiction. Deadlines are deadlines. We don't have a principle close enough for government work. The better question is whether this 30-day business is jurisdictional in the first place. Well, Your Honor, the defendants would argue that it's jurisdictional and the Court can't accept jurisdiction, but there is an exception. I know the defendants argue that it's jurisdictional. I was a little surprised that your reply brief didn't point to Hamer against Neighborhood Housing Services, which holds that deadlines in or attributed to rules cannot be jurisdictional. We really focused our argument based on the principle of the interest of justice requiring the jurisdiction. Jurisdiction and the interest of justice usually have absolutely no overlap. It is not just to dismiss an appeal filed 10 minutes late, but it does happen. So I'm asking the question, as I will ask Mr. Kraft, whether this deadline that Schaefer attributes to the district court is jurisdictional at all. Well, certainly other circuits don't believe that there is an ability to impose this 30-day requirement or, in fact, any deadline as a jurisdictional prerequisite. In fact, Rule 54B contains no such prerequisite of a 30-day deadline to condition the exercise of jurisdiction. Your Honor. Well, what would be the limits? Well, Rule 54B, in fact, doesn't have a time limit at all. Doesn't have a time limit. There is no time limit. Now, there are, and the prior cases in this circuit involved two very, very late, well, maybe not late, but they were 13 months after the court had completed the underlying dispute. And in this case, the judge issued an order, asked that there be an amended complaint. If the plaintiffs wanted to pursue an amended complaint, they needed to do so by a certain date. The plaintiffs filed that amended complaint in a timely manner. And that order also specified that it would issue a final judgment, if requested, after the decision had been made about whether an amended complaint was going to be pursued. And really, it does matter whether the amended complaint was pursued because if the parties decided not to pursue the amended complaint, that may have a bearing on whether the parties were going to seek an appeal. Ms. Coffin, let me ask you something. You've got to follow this question. I want to get to the extreme. Going into this is extreme hardship. But if this was a claim processing rule and not jurisdictional, then the state can raise it for the first time on appeal, and you can argue that the state waived it. But in your reply brief, you don't argue waiver. And because you don't argue waiver, you can waive the waiver argument, which means that the Rule 54B argument by the defendant is still in effect. So if there's a rule, if we make a decision here that Rule 54B applies, it's a claim processing rule, and we enforce it because the state wants us to. Okay? Would we have to, could we remand it to the district court to determine whether or not there's extreme hardship, or is that something we should determine in the first instance? And if we determine that, what facts are in the record by which we can determine extreme hardship? So I see your reply brief where you talk about, look, this is a bad time in the world, right? March of 2020, there was a lot going on. But those facts are just in your reply brief. I don't think those facts are in the record anywhere where the district court weighed in on any of those things, right? So the original appellate brief did not contain any discussion of this because this was never raised at the lower court. Right, I got that. And there was, I believe in our reply brief, we did argue that it had been waived because it had never been addressed. And in fact, the defendants consented and even filed a notice in which they said that they didn't believe there was any reason for delay for the issuance of a partial final judgment. And then the order was granted by the lower court for partial final judgment, and this appeal was taken. I want to be sure I answer your question, which is who decides whether there is extreme hardship. And there's not a lot of guidance based on the prior cases. King and Schaffer do not define what is an undue hardship, but they do recognize the idea that there will be an exception in the interest of justice. And certainly we would argue that in the interest of justice, it's crucial that this appeal be heard for one really important reason, which is that it's going to be heard now or later. There's judicial economy. The usual rule is that judicial economy is served by the appeal from the final judgment. Hearing two appeals in one case is not in the interest of judicial economy. Maybe that's what Schaffer is getting at. Unless the certification, unless the Rule 54b judgment is really prompt, just wait until the end. The reason that we're raising judicial economy is not because of the appeal, but because the State of Indiana should know whether or not we're going to have to try this case again against the State of Indiana. That is an argument for not having a final decision rule, but we do. Well, no, I'm just saying that the reason... Let me follow up on Judge Kirsch's question. What was the first time the State of Indiana raised this you've taken more than 30 days argument? In its appellee brief. In its brief in this court? That's correct. It was not raised in the district court? No. And it was not raised in the docketing statement, the State file? Not to my knowledge. All right. Well, I'm going to have to ask Mr. Kraft that because we've been holding in the wake of Hamer that claims of delay that are based on the rules rather than statutes are waived, well, forfeited, if not raised in the docketing statement. I understand. Moving on from the issue of this jurisdictional question, the first thing that we really want to emphasize to the court is that the district court erred by looking at matters outside the pleadings under Rule 12.B.6. And in Rule 12.B.6, as we all know, well-pleaded allegations are intended to be acknowledged as true except in the instance of facts that are established as a matter of law. And the question is whether the State of Indiana is an employer as a matter of law. And the allegation is that the Indiana Constitution has created a article 4 of the Indiana Constitution endowing the General Assembly as the legislative arm of the State of Indiana is the employer because it is all powers necessary to become a legislative, to be a legislative body. So this broad branch of powers under Article 4 of the Indiana Constitution is supposed to be the matter of the fact as a matter of law. Are there multiple employers here then? Your argument would be that every intern in the State Legislature would be an employee of the State of Indiana. Perhaps every intern in the judiciary would be an employee of the State of Indiana too. So there are multiple employers then, the Senate or the House and the State of Indiana? Well, I think what I'm arguing right now is that it's too soon to tell, that under a motion to dismiss standard, we can't determine that. And it's certainly not determined as a matter of law under the language in the Indiana Constitution. And what's, I think, more important for the Court to think about with regard to what the District Court did was it looked at, it based its opinion very specifically on the motion to intervene filed by the Senate of the State of Indiana. Now the Senate made this argument that Article 4 had created this broad branch of powers which establishes as a matter of law that the legislature is the employer because it has hiring and firing authority. We have to acknowledge something right up front because this case is unusual in that it involves the former Indiana Attorney General who is charged with defending the State of Indiana and its agencies. Well, not anymore though. Not this Attorney General, but the office of the Attorney General. But at the time, this Attorney General, the Attorney General, was also the defendant in this case. And the House and Senate sought to intervene for two reasons that they articulated. One, because they felt there was a conflict of interest with the Attorney General being named individually and also representing the State of Indiana. And two, because they would be the appropriate employer under this Article 4 branch of authority. And ultimately, if they were the employer, they wouldn't be liable for the actions of Attorney General Hill. And the district court agreed. And they agreed based on the motion to intervene, which is clearly a matter outside the pleading. And the motion to intervene was chock full of facts that are nowhere in the plaintiff's complaint. So on that basis alone, this court could overturn the district court because of the improper reliance on these matters outside the record. From a more substantive perspective and less procedural, the district court erred in finding that the State of Indiana... I'm sorry, I just realized the time. I'd like to reserve the following, the rest of the time for rebuttal. Certainly, counsel. I know this is a rarely done thing, but I may want to request that we get additional time because we spent so much time on it. Give me an extra two minutes. You'll give me an extra two minutes? You'll have four minutes for rebuttal. Then I'd like to maybe spend another minute on this issue, the Hearn issue, which I just want to say, Your Honors, that... All right, then you'll have three minutes for rebuttal. That's what I'd like to have, three minutes for rebuttal. Go ahead. Okay. We are asking the court to revisit Hearn and Holmes because we think that the court has an interest in doing so and has already expressed an interest in doing so under Tibbs. Tibbs was issued in 2017 by this court, recognizing that there could be a real difference between a state and its own agencies versus a state and political subdivisions. And there is a strong public policy argument as well as an issue with how employers are defined under Title VII that needs to be reconciled and clarified. So we ask that the court reconsider its holding and not overturn Hearn and Holman, but create a clearer understanding of whether the state and its agencies and political subdivisions are all one and the same or not necessarily. Thank you, Your Honor. Thank you, counsel. Mr. Kraft. Good morning, Your Honors. May it please the court. Aaron Kraft for the State of Indiana. The court should either dismiss the appeal for lack of jurisdiction or, if jurisdiction is secure, affirm the district court's dismissal. Mr. Kraft, let's start with jurisdiction. Absolutely. Schaefer did not interpret a statute. That's correct, Your Honor. And he didn't, for that matter, interpret a rule. Also correct. So how can its 30-day time limit be a matter of appellate jurisdiction? Your Honor, the state's position on that is that it actually is not. The reason we raised it as a jurisdiction point— You asked us to dismiss the appeal for lack of jurisdiction. I understand that. It's because the Schaefer and the King case, King in particular, speaks of it in jurisdictional terms. And because the state has an obligation— Well, look, the world has changed since then. The Supreme Court held in Hamer against neighborhood housing services that time limits in the federal rules or attributed to the federal rules are not jurisdictional, period, next case. So how can Schaefer, in the wake of Hamer, be jurisdictional? Again, in the state's view, it is not. The only reason we raised the jurisdictional issue is because of our obligation to raise jurisdiction issues and because King said it's jurisdictional. But because it can't be jurisdictional. I understand that. I understand that. And so this court, I think, would probably have to overrule or determine that King had been abrogated, although I think— We don't have to overrule cases that have already been disapproved by the Supreme Court of the United States. Fair enough, Your Honor. The work is done. Now, what they are is claims processing rules. That's the Supreme Court's current vocabulary. And claims processing rules have to be raised in a timely fashion. Yes. Are you acquainted with what we've said in the wake of Hamer about what a timely fashion is? I am, Your Honor. And to be clear, I agree that if it is a claim processing rule, which I think it is, then we have waived it and we're not pushing that because we didn't raise it to the appellate's brief. Again, the only reason we raise it in the appellate's brief is because King talked about it in jurisdictional terms and I know that we have an obligation as counsel to raise potential jurisdictional defects to the court's attention. But that said, it does not strike, at least to me, as a jurisdictional rule after Hamer and Nutrasilk. So for that reason, it would seem that jurisdiction is, in fact, secure. And because of that, the court can reach the merits and it should affirm the district court's dismissal of the Title VII claims against the state of Indiana itself. Simply put, because plaintiffs have identified the House and the Senate as their employers and because those entities are suable, the state is not the employer for purposes of Title VII. Plaintiffs' claims are against the House and the Senate and adding the state to the mix really adds nothing. Given the way Indiana has structured itself, every quote-unquote state employee has a juridical entity between her and the state itself. And it's that juridical entity that has hiring and firing power and constitutes the employer under Title VII. Now the Hearn and Holman rules recognize this and the district court correctly applied those rules here for two reasons. First off, Indiana law makes it clear that the House and the Senate are juridical entities that can be sued. The Indiana Constitution bestows on the House and the Senate all powers necessary to operate as a legislative branch and the Indiana courts have long held that that power includes the authority to hire and fire employees. The second reason is the actual factual allegations in the amending complaint. The allegations establish that each of the plaintiffs held an employment role within either the House or the Senate. When they complained about the initial incident and then about the alleged retaliation that followed, they complained to House and Senate leadership. It was the House and the Senate that launched the investigations. And I also think it's important, toward the end of their complaint, they take issue and allege as deficient the sexual harassment policies of the House and the Senate and the sexual harassment training of the House and the Senate. There is really no factual allegation in the complaint that ties their employment to any other entity within the state government. It's just the House and the Senate. Now for the first time on appeal, they take issue with Hearn and Holman and argue that those decisions were wrongly decided but the only thing they rely on are out-of-circuit district court decisions, which fall woefully short of what this court usually requires to overturn its precedent. But more importantly, the Hearn and Holman rule makes a lot of sense. First, it is consistent with how private enterprise is treated and it's also consistent with how the federal government is treated. If a federal employee suffers discrimination, they sue the head of the department or agency. They don't sue the United States. Although that is by statute. I agree. I understand that, Your Honor. But I think the absence of a statute on this point here has more to do with the fact that the states, whereas the federal government can control, Congress can control how federal agencies are organized, it doesn't have that control over the states and the states may organize themselves differently. What I think matters is twofold, hiring and firing. I'm still not sure what weight one should give to how the federal government works. If there is some sexually abusive conduct in the workplace, you might sue the agency under Title VII or you might treat it as a tort. And then the right defendant is the United States in its own name. So it doesn't seem to me that there's a clear federal decision that you must sue only the employing agency. Sue the employing agency under Title VII. Now maybe it's enough to say there's a Title VII suit. I think that's right, Your Honor. And I'd also point out that the Indiana Tort Claims Act similarly is usually a suit against the state, although the party is named. But I think the federal analogy just shows at least how Title VII treats employers and that's what really matters here is that it creates some parallelism between state governments. The Hearn Rule creates parallelism between state governments and the federal governments. And also with regard to private enterprise, when you've got a parent in a subsidiary and the subsidiary is a juridical entity and it has hiring and firing power, you sue the subsidiary. You don't sue the parent. So a Dairy Queen employee would sue Dairy Queen for discrimination. It wouldn't sue Berkshire Hathaway. Now there may be an exception in an instance where a parent company wields control over personnel decisions. But there's no allegation like that here. And although the plaintiffs mentioned the integrated enterprise possibility in their reply brief, they certainly never raised that below and they certainly didn't make any argument or tie it to the allegations here in the opening brief. I think the Hearn-Hulman Rule also serves the purposes of Title VII. By requiring the entity that has hiring and firing power and the entity that has control over the employer-employer relationship to defend the suit, it's serving Title VII's purposes because that is the entity that is best able to address, respond to, and prevent discrimination in the workplace. Now on the other side of the balance, are there reasons that Hearn and Hulman isn't a good rule? And the bottom line is no. That rule has been around in this circuit for 22 years and there have not been a rash of decisions where states have somehow been able to avoid their obligations under Title VII through the way they structure themselves. More importantly, as this court explained in Dunn, the substantive standard of liability under Title VII does not depend on the identity of the employer but instead on the identity of the wrongdoer. Strict liability will apply if it is a supervisor and you have a tangible employment action. But otherwise, it's negligence, whether that person is under the employer's control or not. So it can be a co-worker, it could be a customer, it could be, as the Dunn court explained, it could be an abusive macaw. The bottom line is that Title VII imposes a duty on the employer to protect the employee from discrimination in the workplace wherever that discrimination comes from. So whether the state is named as an employer in this case does not affect the substantive liability. I just wonder how far you take that. Should we analogize the former Attorney General to an abusive macaw? No, no, Your Honor. That's not what I'm suggesting. Again, we are not here to, you know, dispute the actual factual allegations and the complaint about what happened at this procedural posture. We have to accept those as true and that's why we haven't pushed back on that. But I think as far as the issue in this appeal is concerned, the upshot is that there's really no reason for the court to revisit Hearn and Holman. And because the district court correctly applied those precedents to dismiss the Title VII claims against the state, the court should affirm. Unless there are any other questions, that's what the state would ask. Thank you very much, Mr. Craft. Ms. Kaufman-Joseph, you have three minutes for rebuttal. Thank you, Your Honor. First of all, the House and Senate are not agencies. They are not state agencies. There's no authority that's been cited that establishes the House and Senate are state agencies. And the only authority that's cited that they should be treated as governmental entities, as defined by Hearn, is this constitutional grant of authority to take all things that are necessary to be legislative body. Second, the argument that this is akin to how the federal government handles this issue is, as Judge Easterbrook observed, defined by statute. And there is no clear-cut federal authority that the state cannot be sued. And in fact, the state is very frequently found as the employer in Seventh Circuit cases. In Chabe v. Indiana, an employee brought a Title VII claim and no one objected to the state of Indiana being the employer. The upshot here is that the district court's ruling is going to result in the state getting to pick and choose when it wants to be the employer and when it doesn't. That's a huge problem, because contrary to what opposing counsel says, there is a big difference  or the House and Senate are the employer. The House and Senate will argue that they have no ability to control Curtis Hill. They have no ability, so under the negligence standard, they have no control, therefore no liability. Whereas the state does have the ability to control Curtis Hill. And the way to really grasp the potential loophole that this conflict creates is by looking at the allegations in the complaint about Curtis Hill's retaliatory actions, where he, after these plaintiffs reported the alleged harassment, he took to Indiana social media accounts, state of Indiana social media accounts, not his own. He gave press conferences as the Indiana Attorney General on state of Indiana property in the scope of his employment. And the only entity that could corral that behavior, that could control that behavior, that could influence that behavior, is the state of Indiana. And if the district court... Could you just emphasize how that control would be exercised over an independent constitutional officer? That's an interesting point, because it's unclear, but... One would think the answer is impeachment in the House and conviction in the Senate. That is certainly one option, but the other option is that they could revoke the credentials to the social media account. He is not in control of the actual infrastructure, and the governor could direct assets to be cut off to him, so that he cannot use them to then bully, retaliate, and threaten the plaintiffs who had the nerve to come after him, to report his behavior. Your Honor, I'm out of time, so unless there's further questions, I appreciate your consideration. Thank you very much. Thank you. The case is taken under advisement.